JOHN H. RICHARDSON & others *vs.* GEORGE WHEATLAND.
GEORGE WHEATLAND, Jr. *vs.* THE SAME.

A testator devised land to his daughter H. during her life, and to her husband W. during his life, and at the decease of H. and W. to be divided among the heirs of H. *Held,* that the remainder, after the termination of the life estates of H. and W., was contingent until the death of H., and vested, on her death, in those who were then her heirs at law.

THESE were actions of trespass upon the case, in each of which the declaration alleged that the defendant, on the 25th of September 1843, was tenant for his own life of a certain lot of land in Cambridge, called the "Hotel Estate," and on that day felled, cut down, and destroyed, three elm trees there standing and growing for timber, and converted them to his own use, whereby the reversionary interest in said land had been injured. Each case was submitted to the court on an agreed statement of facts. In the first action, those facts were as follows :

The defendant is tenant for life of the premises described in the plaintiffs' writ, and does not deny that he has committed waste. The plaintiffs claim the reversion in fee : but the defendant denies that they have any interest in the estate. Both parties claim under John Richardson, who died May 3d 1837, leaving a will, dated April 23d 1837, and proved and allowed on the 27th of June 1837, and which, it is agreed, (if competent to be proved,) was actually drawn up before the 18th of April 1837, though not signed till said 23d of April. Said will is to be taken as part of the case. The defendant, and his wife Hannah B. Wheatland, a daughter of the said testator, who took life estates in the *locus* described in the plaintiffs' writ, by said

will, were both living at the testator's death.   They had a child born April 12th 1837, who died on the 18th of that month, and another child (the plaintiff in the second action) born October 21st 1839.   Said Hannah, wife of the defendant, died on the 15th of March 1840.   Two of the plaintiffs, viz. John H. and George W. Richardson, are the sons of said John Richardson, and the other plaintiffs are the children of his two daughters who died during his life.   Said John H. and George W. Richardson and said Hannah B. Wheatland were the only children of said John Richardson who survived him ;  and said John H. and George W. both had children living at the making and at the execution of the said will, and at the death of the testator.

If the plaintiffs have sufficient interest in the estate to enable them to maintain any action for waste, they shall have judgment for $      and costs ; otherwise, the defendant shall have judgment.

In the second case, the foregoing facts, so far as they were applicable, were also agreed by the parties, and there was a like agreement as to the judgment to be rendered.

The clause in the will of said John Richardson, on which the question in these cases depended, was as follows :  " *Seventh.* I give and bequeath to my daughter, Hannah B. Wheatland, wife of George Wheatland, Esq., the East Cambridge Hotel Estate, called the Union Hotel, being all the real estate I own in East Cambridge, to her during her life, and to her husband, George Wheatland, during his life, to be kept in repair out of the income thereof ; and at the decease of said Hannah B. Wheatland, and said George Wheatland, to be divided among the heirs of said Hannah ; possession to be had in two years after my decease."

These cases were argued at Salem, November 9th 1843, by *Ward,* for the plaintiffs in the first action and for the defendant in the second action, and by *C. P. Curtis,* for the defendant in the first action and for the plaintiff in the second action.   The opinion of the court was delivered at Boston, January 15th 1844.

SHAW, C. J.   Both these are actions of the case in the nature of waste.   The first is brought by the sons, and the children of deceased daughters of John Richardson deceased, alleging that they

have the next estate of inheritance expectant on the determination of the defendant's life estate, and that they are entitled to recover damages for the alleged waste. The second action is brought by a minor child of the defendant, alleging that he has the next immediate estate of inheritance, and that the right to recover damages is in him ; it being admitted that some waste has been done. *Fay* v. *Brewer*, 3 Pick. 203. The question is, which of the parties, if either, can maintain the action ; and this depends upon the construction of the seventh clause of the will of John Richardson, under whom all the parties claim. [Here the judge recited that clause in the will.]

It appears, by the facts agreed, that Mr. and Mrs. Wheatland had no child living at the decease of the testator, they having lost an infant child who was born a short time before the execution of the will, but survived a few days only. Afterwards, in 1839, George Wheatland, jr., the plaintiff in the second of these actions, was born ; and in 1840, Mrs. Wheatland died.

It is contended by the testator's heirs, that as Mrs. Wheatland had no child living at the time of the death of the testator, and as they insist that it was intended by the testator that the remainder should vest at the same time with the life estates — by the terms " heirs " her brothers, and her sisters' children, her then heirs apparent, take the estate, to the exclusion of her after-born child, who was her heir at her death. This appears to be a very forced construction of the will, and apparently not calculated at all to carry into effect the intent of the testator ; because it would defeat the claims of his daughter's only child and heir at law, contrary to the express terms of the will. Besides ; why shall we conclude that it was intended by the testator that the remainder should vest at the same time with the estates for life ? The courts have often, indeed, said that the law will favor the construction which gives a vested remainder, in preference to that which gives a contingent remainder. This preference, however, is not to be so pressed as to defeat the intent of the testator.

But it is supposed that this devise would have constituted a devise in fee in Mrs. Wheatland, by force of the rule in *Shelley's*

*case,* and is converted into an estate for life, with remainder to her heirs, by force of the statute of this Commonwealth, limiting and controlling the rule in that case; and that it is governed by the case of *Bowers* v. *Porter,* 4 Pick. 198. In *Shelley's case,* 1 Co. 94, it was held as a rule of the common law, that where t.iere is a devise to one for life, with remainder to his heirs, the latter clause is not a distinct devise, enabling the heirs to take the remainder by purchase, but only serves to qualify and enlarge the estate of the first taker; to convert what would otherwise have been an estate for life into an estate of inheritance in fee, or in tail, according to the terms of the limitation; and, as a necessary consequence, that the first taker might alienate the estate and defeat the heirs.

Where a testator gives an estate to one for life, in terms, with a devise over to the general heirs, or heirs of the body, the natural presumption would seem to be, that the intent of the testator was, that it should be carried into effect literally, and that the first taker should have a life estate only, without power to alienate, and defeat the claims of the heirs, who seem to be alike the objects of the testator's bounty. The rule in *Shelley's case,* .therefore, would probably defeat the real intent of the testator. Assuming this to be the case, the legislature of Massachusetts passed an act apparently for the purpose of altering this rule, and directing that a construction should be put upon such a devise, better calculated to carry the testator's intent into effect. It was provided by *St.* 1791, *c.* 60, § 3, that such a devise should be construed to vest an estate for life in such devisee, and a remainder in fee simple in such heirs. This provision was re-enacted, and extended to lands given by deed as well as by will, by the Rev. Sts. *c.* 59, § 9. 1 Met. 282. It may perhaps be doubtful whether the present case would come under the rule in *Shelley's case,* and be governed by this statute; because it is not a devise to one for life, with an immediate remainder to heirs, since there is another life estate intervening. But were it otherwise, and were this governed by the statute, it would seem to be the most natural construction of the statute, and best adapted to accomplish its obvious purpose, viz that of prevent-

ing the first taker from alienating the estate, and of securing the ultimate benefit to the heirs, to hold that those who are heirs of the first taker *at the time of his decease* should take the estate.    Then the consequence would be, that the remainder would vest at the moment of the termination of the life estate, so that the same event, which would determine the precedent estate, would fix and ascertain the heirs intended by the statute to take the remainder.    And it seems immaterial whether, in any technical classification, it be called a vested or contingent remainder. It is a special estate created by statute, and cannot exist at common law, because the rule in *Shelley's case,* which our statute obviates here, would prevent it.    That this would be a contingent remainder, to become vested at the death of the ancestor, is distinctly expressed by Cruise, in his statement of the rule in *Shelley's case.*    Where an estate is conveyed to A. for life, with a remainder to the heirs, or heirs of the body, of A., if the strict construction had been made, according to the strict meaning of the words, A. would have taken only an estate for life, and the word " heirs," or " heirs of the body," of A., would have been considered as words of purchase, giving a contingent remainder to the heirs, or heirs of the body, of A.    Cruise's Digest, Tit. 32. *c.* 25, § 1.    If therefore the effect of our statute is to do away the rule in *Shelley's case,* and restore the natural construction, then, under this statute, the heirs, as purchasers, take a contingent remainder

We are then pressed with the authority of *Bowers* v. *Porter,* 4 Pick. 198, in which it seems to be considered, in such a case, where there are children of the first taker living at the time of the testator's decease, that by " heirs " was intended children, and therefore that the children then living took vested remainders, with the capacity of opening to admit after-born children.    One objection to considering it as a vested remainder is, that if such children were to be born or die during the life of the first taker, the estate, at least their share of it, would descend to their heirs, instead of going, according to the express intent of the will, to the heirs of the first taker.    Another consequence would be, that such children might alienate their estates dur

15*

ing the life of the first taker, and thereby *pro tanto* defeat the intent of the testator to secure the estate to the heirs of the tenant for life.   But the case of *Bowers* v. *Porter* was very distinguishable from the present.   There was no intervening life estate ; the children were in being at the time of the making of the will and of the decease of the testator ; and there was considerable doubt whether the first devise, charged with the payment of a sum of money, was not a devise in fee.   But in the present case, it is immaterial whether it is considered as a devise to " children," to become vested as they come into being, or whether the vesting is suspended until the death of the mother ; because, as there was no other child born after the death of the testator, and as the minor plaintiff was living at the decease of his mother, he must take the remainder, either way.

One argument drawn from the words of the Rev. Sts. *c.* 59, before referred to — supposing the statute to apply to the case — it may be proper to consider.   The words are, that such " conveyance shall be construed to *vest* an estate for life only in such first taker, and a remainder in fee simple."   The argument is, that according to the true construction, it shall vest immediately.   But it is quite sufficient to satisfy the words, to say that it shall vest at such time as will best fulfil the purposes of the statute ; that is, immediately on the termination of the particular estate.   It will give that direction to the transmission of the estate, which the statute presumes it to have been the intention of the testator to give, to wit, to the first taker for life, and then to his heirs ; to those whom the law regards, in the absence of other dispositions by will, as the successors to his estate.

But it seems that the result would be the same, whether this case be considered as coming within the statute or not.   According to the rule in *Shelley's case,* independent of the statute, it would give a life estate to the daughter, remainder to her husband for life, remainder to herself in fee.   Her life estate and remainder in fee would not merge, on account of the intervening life estate.   But the consequence would be, that her only child and heir at law would take the remainder in fee, by descent.

If, however, the case comes under the statute, it is a devise to

the daughter for life, remainder to her husband for life, remainder to the heirs of the daughter. This being a *designatio personarum*, they would take as purchasers, under that designation. But as *nemo est hæres viventis*, no one could come within the description until the death of the first taker. It would then be a contingent remainder, coming under the fourth head, as classified by Mr. Fearne, where the person to whom the remainder is limited is not yet ascertained, or not yet in being. Fearne, (7th ed.) 5, 9. But this would vest in the child *eo instanti* with the decease of the mother, ascertaining her heir and terminating her life estate.

But suppose the word " heirs " in this devise should be construed to mean children — and possibly such was the sense in which the testator used it — then if any one or more were living at the time of the death of the testator, such one or more would take a vested remainder; otherwise, the first one who should be born afterwards would take a remainder vested when it should come into existence, liable to open for the admission of after-born children, if any. Still, as the child of Mrs. Wheatland was the only one born, if the remainder became vested in him at his birth, it still remains vested in him, and he has the next expectant estate of inheritance.

If this could be construed to be an executory devise — which we are of opinion it cannot, because it is to take effect immediately on the determination of the particular estate — still, as between these parties, the result would be the same.

In any possible aspect in which we can consider the subject, the court are of opinion that the child of Mrs. Wheatland, and not her collateral heirs, was entitled to this estate; that this child has now a vested remainder expectant on the termination of the father's life estate, and, having the next immediate estate of inheritance, is entitled to maintain this action. It follows as a necessary consequence, that the collateral relations of Mrs. Wheatland, who would have been her heirs but for the birth of this child, have not any estate of inheritance, and cannot maintain their action for waste. In the second action, judgment is to be entered for the plaintiff